SMITH v E R SQUIBB & SONS, INC

Docket No. 58894. Argued April 11, 1978 (Calendar No. 5).—Decided January 10, 1979.

Eddie Smith, Jr., administrator of the estate of Shirley Smith, deceased, brought an action for wrongful death against E. R. Squibb & Sons, Inc., St. Joseph Mercy Hospital, Anthony E. Kozlinski, M.D., and other doctors. The decedent's death was caused by an acute hypersensitive reaction to Renografin-60 (a Squibb product) which was injected into her blood stream as a contrast medium for an X-ray examination. The plaintiff alleged that defendant Squibb had failed to give adequate warnings to the medical profession of the dangers of the product and precautions to take in using it. This failure was said to constitute both a breach of an implied warranty and negligence. The Wayne Circuit Court, Nathan J. Kaufman, J., refused the plaintiff's request to charge the jury on the theory of breach of implied warranty. The trial court also excluded evidence of subsequent remedial measures taken by defendant Squibb. The jury gave a directed verdict for defendant Kozlinski which was

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 49, 50.
63 Am Jur 2d, Products Liability § 54.
Liability of manufacturer or seller for injury caused by drug or medicine sold. 79 ALR2d 301.
[2, 8] 63 Am Jur 2d, Products Liability § 98.
[3] 63 Am Jur 2d, Products Liability § 131.
Products liability: strict liability in tort. 13 ALR3d 1049.
[4] 63 Am Jur 2d, Products Liability §§ 26, 27, 42.
[5] 63 Am Jur 2d, Products Liability §§ 46, 79.
[6] 63 Am Jur 2d, Products Liability § 111.
[7] 63 Am Jur 2d, Products Liability § 114.
[9] 63 Am Jur 2d, Products Liability § 3.
[10] 63 Am Jur 2d, Products Liability § 53.
[10, 11, 12] Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury. 76 ALR2d 9.
[11] 63 Am Jur 2d, Products Liability §§ 53, 54.
[12] 63 Am Jur 2d, Products Liability § 57.
[13] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 49, 50.

not appealed, and a verdict of no cause of action for the other defendants. Following a settlement with the other defendants, plaintiff appealed only as to Squibb. The Court of Appeals, Bashara, P.J., and D. F. Walsh and W. S. White, JJ., affirmed (Docket No. 19119). Plaintiff appeals the judgment. Leave to appeal is limited to the issues of the jury instructions and the evidence question. *Held:*

1. Negligence and implied warranty are distinct theories. However, when the factual issue is not whether the product itself is defective, but whether the manufacturer has provided adequate warnings, the two theories involve identical facts and require proof of exactly the same elements, because the focus is on the *adequacy* of the warnings regardless of the theory of liability. The test determining the adequacy of a warning under either theory is whether the defendant exercised reasonable care under the circumstances. Therefore, the trial court did not commit reversible error by refusing to instruct the jury on the theory of breach of implied warranty. Indeed, giving the requested instruction would have been repetitive and could have misled the jury by giving the impression that the plaintiff could recover on the implied warranty even if defendant Squibb were not negligent.

2. The trial judge properly excluded evidence that defendant Squibb subsequently changed its warnings to physicians about Renografin-60. The policy of excluding evidence of subsequent remedial measures is to encourage improvement of products, property, services and customs without risk of prejudicing any court proceeding and consequently delaying implementation of improvements. The plaintiff sought to have the evidence admitted to buttress his argument that the warnings were inadequate. The policy against allowing such evidence is well established in case law and is continued in the new rules of evidence which would be applicable if the requested new trial were granted, so that reversal on this point would be meaningless as well as improper.

Affirmed.

Justice Levin dissented. A manufacturer's implied warranty may require that it produce a product of higher quality than would result from the exercise of reasonable care; the product must be reasonably fit for the purpose intended. He would hold that the higher standard of quality, reasonable fitness for the intended purpose, applies to the adequacy of warnings accompanying the product as well as the adequacy of the structure or design of the product itself.

1. In this case the jury was instructed to decide the adequacy

of the warnings by an assessment of the reasonableness of defendant Squibb's conduct, the negligence standard, and was given no instruction to consider the reasonableness of the warning itself. The jury was thus instructed that unless it concluded that Squibb was blameworthy the warning was adequate. In a product liability case the jury may find for the plaintiff without deciding that the manufacturer was to blame or at fault. The inquiry is not solely whether the manufacturer has done all that a reasonable manufacturer might have done but, rather, focuses on whether the product is reasonably fit for the purpose intended. Where there may be dangers inherent in use of the product and therefore a duty to warn of known danger, the inquiry is not whether the manufacturer acted reasonably but whether the warnings actually given are reasonably adequate. Warnings, like structure and design of a product, must measure up to the higher standard of quality implicit in the requirement that the product be reasonably fit for the intended purpose.

2. The negligence standard looks solely to the defendant's conduct and seeks to determine whether he *acted,* as the judge charged the jury in this case, in conformity to what the law expects of *him.* The implied warranty standard looks, rather, to the product and asks a different question—whether the *product* measures up to the standard which a user may reasonably expect of *it.* The policy of the law is to enforce the consumer's reasonable expectations of the product even though doing so might mean that more is required of the product than reasonable conduct by the manufacturer would produce. A drug manufacturer is not subject to liability for anaphylactic reaction or for risks it does not know and cannot reasonably be expected to know. It is, however, subject to liability if the means of notification of known risks does not actually notify and the jury concludes that more adequate means of notification can reasonably be expected.

3. A prescription drug may be unavoidably unsafe even though it is made in the way intended, contains no impurities, and is in the condition planned. If such a product is accompanied by adequate warning, it is not defective and is not *unreasonably* dangerous. However, when not accompanied by an adequate warning, the product is defective, and thus may be unreasonably dangerous. The defect is not in the dangerous propensities or side effects of the drug, but the failure to warn.

4. Although the jury concluded that Squibb had acted reasonably, it might nevertheless have concluded that the drug was not reasonably fit for its intended use without warnings more

complete than were given. The jury should have been instructed that it could conclude that the product was not reasonably fit for its intended use unless a warning of the life-threatening risk of delayed anaphylactic reaction and of the treatment to be employed in the event of such reaction was *attached* to the vial or in some other manner communicated to physicians administering the drug.

69 Mich App 375; 245 NW2d 52 (1976) affirmed.

OPINION OF THE COURT

1. DRUGS AND NARCOTICS — PRODUCTS LIABILITY — DUTY TO WARN — NEGLIGENCE.

A manufacturer of a prescription drug has a legal duty to warn the medical profession of any risks inherent in the use of the drug which the manufacturer knows or should know to exist; in the context of a negligence claim the warnings must be examined *as to their reasonableness under the circumstances.*

2. PRODUCTS LIABILITY — IMPLIED WARRANTY.

Breach of an implied warranty of a product is established when the plaintiff proves that a product defect attributable to the manufacturer has a causal relationship to the plaintiff's injuries.

3. PRODUCTS LIABILITY — INADEQUATE WARNING — IMPLIED WARRANTY.

Inadequate warnings alone may constitute a product defect whether the plaintiff's theory is implied warranty or strict liability in tort.

4. PRODUCTS LIABILITY — INADEQUATE WARNING — IMPLIED WARRANTY — NEGLIGENCE.

Whether a manufacturer of a product is liable because of an inadequate warning of the risks inherent in the use of the product turns on the standard of reasonable care whether the plaintiff's theory is negligence or implied warranty; therefore, it is not reversible error to refuse to instruct the jury on a theory of *breach of implied warranty and to submit the case* solely on a theory of negligence where the factual issue is the adequacy of the warnings given.

5. EVIDENCE — PRODUCTS LIABILITY — DRUGS AND NARCOTICS — INADEQUATE WARNING — SUBSEQUENT MEASURES.

Evidence of subsequent changes in the warnings issued by a drug manufacturer of the risks inherent in the use of its product is

not admissible to prove that the warnings previously given were inadequate (MRE 407).

DISSENTING OPINION BY LEVIN, J.

6. PRODUCTS LIABILITY — IMPLIED WARRANTY.

*A manufacturer's implied warranty may require that it produce a product of higher quality than would result from the exercise of reasonable care; the product must be reasonably fit for the purpose intended.*

7. PRODUCTS LIABILITY — INADEQUATE WARNING — IMPLIED WARRANTY.

*The standard of quality of a manufacturer's implied warranty, reasonable fitness for the intended purpose, should be applied to the adequacy of warnings of a known danger accompanying the product as well as to the adequacy of the structure or design of the product itself.*

8. PRODUCTS LIABILITY — IMPLIED WARRANTY.

*In a product liability case a jury may find for the plaintiff without deciding that the mnaufacturer was to blame or at fault; the inquiry is not solely whether the manufacturer has done all that a reasonable manufacturer might have done but, rather, focuses on whether the product is reasonably fit for the purpose intended.*

9. PRODUCTS LIABILITY — IMPLIED WARRANTY — NEGLIGENCE.

*The negligence standard looks solely to the defendant's conduct and seeks to determine whether he acted in conformity with what the law expects of him; the implied warranty standard looks, rather, to the product and asks whether the product measures up to the standard which a user may reasonably expect of it, even though this standard might require more of the manufacturer than reasonable conduct would produce.*

10. PRODUCTS LIABILITY — DRUGS AND NARCOTICS — INADEQUATE WARNING.

*A drug manufacturer is subject to liability if the means of notification of known risks does not actually notify and the jury concludes that more adequate means of notification can reasonably be expected.*

11. PRODUCTS LIABILITY — DRUGS AND NARCOTICS — INADEQUATE WARNING.

*A prescription drug may be unavoidably unsafe even though it is made in the way intended, contains no impurities, and is in the*

*condition planned; if the drug is accompanied by an adequate warning of the known risks, it is not defective and is not so unreasonably dangerous as to subject the manufacturer to liability for its product.*

12. PRODUCTS LIABILITY — DRUGS AND NARCOTICS — IMPLIED WARRANTY — INADEQUATE WARNING.

*A prescription drug which is unavoidably unsafe is defective when not accompanied by an adequate warning; the defect is not in the dangerous propensities or side effects of the drug, but in the failure to warn.*

13. PRODUCTS LIABILITY — DRUGS AND NARCOTICS — INADEQUATE WARNING.

*The jury should have been instructed in an action for product liability that it could conclude that a prescription drug was not reasonably fit for its intended use unless a warning of the life-threatening risk of delayed anaphylactic reaction to the drug and of the treatment to be employed in the event of such reaction was attached to the vial containing the drug or in some other manner communicated to physicians administering the drug.*

*Peter R. Barbara* and *Frank G. Becker,* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *W. P. Cooney* and *John P. Jacobs)* for defendant.

COLEMAN, C.J. This product liability case arose from the acute anaphylactic (extreme hypersensitivity) reaction resulting in the death of Shirley Smith which occurred when Renografin-60, a product of defendant E. R. Squibb & Sons, Inc., was injected into her blood stream. Such sensitivity is extremely rare and cannot be discovered prior to injection. It is undisputed and clearly reflected in the record that there was no intrinsic defect in the drug.

Plaintiff named the drug manufacturer, various

doctors and the hospital as defendants in the action. Upon trial by jury, one doctor received a directed verdict on his behalf. The two other doctors, the hospital and the drug manufacturer were successful in obtaining jury verdicts of no cause of action. Nevertheless, plaintiff received monetary settlements from the two doctors and from the hospital after he filed an appeal of the verdicts. The drug manufacturer, E. R. Squibb & Sons, Inc., is the sole remaining defendant.

In the trial court, plaintiff predicated the drug manufacturer's liability upon an alleged failure to provide adequate warnings to the medical profession of the dangers indigenous to Renografin-60 and of the proper precautionary procedures. Although counts of breach of implied warranty and negligence were pled, the trial court refused to instruct the jury concerning the implied warranty claim. Furthermore, proffered evidence of subsequent changes in the literature accompanying the product was held inadmissible.

We granted leave to appeal and limited our inquiry to the following issues of law:

1. Whether it was reversible error for the trial judge to refuse to charge the jury regarding breach of implied warranty, and

2. Whether the trial judge improperly excluded evidence of changes in written material made by the defendant subsequent to 1969.

The Court of Appeals answered both questions in the negative and affirmed the jury's verdict of no cause of action. 69 Mich App 375; 245 NW2d 52 (1976).

The finding of the jury that the warnings were adequate is not at issue. We are here confined to questions of law relating to the adequacy of instructions to the jury and of admissibility of cer-

tain evidence. We affirm the circuit court and the
Court of Appeals.

I

On April 14, 1969, Shirley Smith was referred to
St. Joseph Mercy Hospital for an intravenous pyel-
ogram (IVP) by her personal physician, Dr. Kozlin-
ski. An IVP is an X-ray of the kidneys which
involves the injection of a contrast medium into
the veins. The contrast medium serves as a dye by
which X-rays can more effectively reveal the oper-
ation of the kidneys. The particular contrast me-
dium used was Renografin-60, a 60% iodine solu-
tion manufactured by E. R. Squibb & Sons, Inc.

Plaintiff's decedent arrived at the hospital on
April 16, 1969 at approximately 12:30 p.m. After
the patient was prepared by a technician, an
emergency room physician, Dr. Scerhelmi, admin-
istered the drug. Dr. Scerhelmi injected a one-half
cc trial amount and then, slowly, the remainder of
the drug. Several minutes subsequent to the injec-
tion, Mrs. Smith became nauseated—a not uncom-
mon occurrence. After Dr. Scerhelmi departed,
however, a delayed reaction set in. Foam started
to form on her mouth, she had difficulty in breath-
ing and fainted. The radiologist, Dr. Dolan, was
called. The patient underwent acute anaphylactic
shock. All efforts to revive her failed and Shirley
Smith died at approximately 2:30 p.m. The cause
of death was determined to be a hypersensitive
reaction to Renografin-60.

Each packing case of Renografin-60 contained 25
vials, each vial containing 30 cc of the drug.
Because of the small size of the vials, no warnings
appeared on the labels. However, each vial came
with a "package insert" wrapped around it. At the
hospital, these individual vials were taken to and

placed in cabinets in the X-ray rooms, while the packing cases and the inserts remained in the pharmacy.

Dr. Scerhelmi testified that she had read the Renografin-60 inserts and had read journals on the subject *prior to administering the fatal IVP.* Moreover, she was an experienced physician who had previously given hundreds of IVP's.

The inserts were four pages long and contained information concerning the chemical contents, dosage, functions, precautions and adverse reactions relative to Renografin-60. The possibility of delayed anaphylactic reactions was stated in the text and further specific recommendations for diagnosis and treatment were set forth in an article (17 pages long) cited in a footnote.

As Dr. Dolan said about the Squibb warnings:

"Every single piece of this medicine has it with it. Every intravenous pyelogram has literature with it, contraindications, contraindications and reactions. The company has literature in everything. This is the way it's packed. Even if you don't know them, you can read them and know what to expect, what might happen, even without any medical knowledge * * *."

As a method of sales promotion primarily, drug manufacturers also commonly inform physicians concerning prescription drugs by two other methods. The information is published in the Physicians Desk Reference to Pharmaceuticals and Biologicals (PDR). This annual volume contains information supplied by drug manufacturers relevant to each product. The 1969 publication of the PDR did not mention the possible adverse effects of Renografin-60.

The other method of conveying information to the medical profession is through "detail men".

Detail men are sales representatives of the drug companies who extol the virtues of the product while presumably instructing doctors in the proper method of administering the drugs. Squibb's detail man had briefed all radiologists at the hospital prior to Shirley Smith's injection. Dr. Scerhelmi was an emergency room physician and not a radiologist so she was not present on these occasions.

The essence of plaintiff's allegations against Squibb is that adequate warnings relative to inherent dangers and necessary precautions were not conveyed to doctors prescribing and using Renografin-60. Such failure is alleged to constitute both a defect in the drug and negligence on the part of the manufacturer.

II

The Court of Appeals held that in the context of an alleged failure to provide adequate warnings, breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements. Although facially contradictory, upon thorough analysis this position becomes both compelling and irrefutable.

A manufacturer of a prescription drug has a legal duty to warn the medical profession, not the patient, of any risks inherent in the use of the drug which the manufacturer knows or should know to exist. *McEwen v Ortho Pharmaceutical Corp,* 270 Or 375; 528 P2d 522 (1974), *Sterling Drug, Inc v Yarrow,* 408 F2d 978, 993 (CA 8, 1969), *Love v Wolf,* 226 Cal App 2d 378, 395; 38 Cal Rptr 183, 192-193 (1964). However, this duty has been held to require warnings to the patient when the prescription drug is administered in a mass immunization program. *E.g., Davis v Wyeth Laboratories, Inc,* 399 F2d 121 (CA 9, 1968). Determination

of whether this duty has been breached in the context of a negligence claim necessitates that the warnings given be examined as to their reasonableness under the circumstances.

Breach of implied warranty, on the other hand, is established when plaintiff proves that a product defect attributable to the manufacturer has a causal relationship to plaintiff's injuries. *Heckel v American Coupling Corp*, 384 Mich 19, 22; 179 NW2d 381 (1970), *Piercefield v Remington Arms Co*, 375 Mich 85, 96-99; 133 NW2d 129 (1965). It is commonly accepted that inadequate warnings alone can constitute a product defect, whether the theory be implied warranty or strict liability in tort. *E.g., Gutowski v M & R Plastics & Coating, Inc*, 60 Mich App 499; 231 NW2d 456 (1975), *Berkebile v Brantly Helicopter Corp*, 225 Pa Super 349; 311 A2d 140 (1973), 2 Restatement Torts, 2d, § 402A, Comments h-k, Noel, *Products Defective Because of Inadequate Directions or Warnings*, 23 SW L J 256 (1969). As noted by the Court below, it is also generally recognized "that implied warranty and negligence are separate and distinct theories of recovery and that under the implied warranty theory it is not necessary to prove negligence". 69 Mich App 375, 381 (citation omitted).

The distinction between the elements of negligence and breach of implied warranty is that in the former plaintiff must prove that the defect was caused by the manufacturer's negligence, whereas under the warranty theory, plaintiff need only establish that the defect was attributable to the manufacturer, regardless of the amount of care utilized by the manufacturer.

However, when the factual issue is not whether the product itself is defective, but is whether the manufacturer has provided adequate warnings, the

existence of a product defect and a breach of duty is determined by the same standard—reasonable care under the circumstances. In the context of a product liability case, it has been said that "[t]he standard by which a jury determines adequacy is the general negligence standard that liability is created by 'conduct which falls below the standard established by law for the protection of' others against unreasonably great risks of harm'". *Gutowski, supra,* pp 507-508, quoting from Prosser, Law of Torts, (4th ed), p 145. On the facts, therefore, the two theories involve identical facts and require proof of exactly the same elements. This is true because the focus is upon the *adequacy* of the warnings, regardless of the theory of liability.

Although plaintiff is correct when he argues that negligence and implied warranty are separate and distinct theories, it is clear that Renografin-60 could not be defective unless Squibb was negligent. The test for determining whether a legal duty has been breached is whether defendant exercised reasonable care under the circumstances. Determination of whether a product defect exists because of an inadequate warning requires the use of an identical standard. Consequently, when liability turns on the adequacy of a warning, the issue is one of reasonable care, regardless of whether the theory pled is negligence, implied warranty or strict liability in tort. See, *e.g., Gutowski, supra, Basko v Sterling Drug, Inc,* 416 F2d 417, 427 (CA 2, 1969), Kidwell, *The Duty to Warn: A Description of the Model of Decision,* 53 Texas L Rev 1375 (1975), Merrill, *Compensation for Prescription Drug Injuries,* 59 Va L Rev 1, 31 (1973).

We hold, therefore, that the trial court did not commit reversible error when it refused to instruct the jury on plaintiff's implied warranty theory and

submitted the case solely on the negligence claim. Indeed, such an instruction would have been repetitive and unnecessary and could possibly have misled the jury into believing that plaintiff could recover on the warranty count even if Squibb were not negligent. Such is not the law, given this factual setting. See *Skaggs v Clairol, Inc,* 6 Cal App 3d 1; 85 Cal Rptr 584 (1970) (hearing granted, June 17, 1970, dismissed by stipulation), *Rainbow v Albert Elia Bldg Co,* 49 AD 2d 250; 373 NYS2d 928 (1975). Duplicative instructions could have created jury confusion and prejudicial error. We believe the trial judge properly exercised his discretion in this matter.

This opinion is limited solely to its facts. We do not suggest that implied warranty and negligence are not independent causes of action. When the factual issue is the adequacy of the warnings given, the legal standard under either theory is one of reasonable care under the circumstances. Note should be made, however, that *on different facts* it could be prejudicial error *not* to give the implied warranty instruction. See, *e.g., Midgley v S S Kresge Co,* 55 Cal App 3d 67; 127 Cal Rptr 217 (1976) (issue of contributory negligence requires instruction on both negligence and strict liability).

## III

Plaintiff contends that the trial court erred when it held that evidence of subsequent changes in the Renografin-60 package inserts and PDR references was inadmissible. The record indicates that Squibb made its warnings and instructions even more explicit in later years. The trial court relied on Michigan's strong policy against admitting evidence of subsequent remedial measures for the purpose of proving negligence. *Crews v Gen-*

*eral Motors Corp,* 400 Mich 208; 253 NW2d 617
(1977), and MRE 407. See, also, *Judis v Borg-War-
ner Corp,* 339 Mich 313; 63 NW2d 647 (1954), and
*Denolf v Frank L Jursik Co,* 395 Mich 661; 238
NW2d 1 (1976).

We hold that the trial judge properly excluded
the proffered evidence. MRE 407 reads:

"When, after an event, measures are taken which, if
taken previously, would have made the event less likely
to occur, evidence of the subsequent measures is not
admissible to prove negligence or culpable conduct in
connection with the event. This rule does not require
the exclusion of evidence of subsequent measures when
offered for another purpose, such as proving ownership,
control, or feasibility of precautionary measures, if
controverted, or impeachment." Also see committee
comments.

Exclusion under the rule restates a basic tenet
which has long been accepted in Michigan. It
encourages persons to improve their products,
property, services and customs without risk of
prejudicing any court proceeding and consequently
delaying implementation of improvements. See
*Crews, supra, Denolf, supra, Judis, supra, Grawey
v Genesee County Road Commission,* 48 Mich App
742; 211 NW2d 68 (1973). Plaintiff's contention
does not fall within any exceptions to the rule.

It is irrelevant that this is a product liability
case. Plaintiff's argument that the evidence should
have been admitted under his implied warranty
count ignores the essence of his legal position on
these facts. As the Court of Appeals stated:

"Inasmuch as the plaintiff's entire case was built
around proof of an inadequate warning, a negligence
concept, * * * the theoretical distinction between negli-
gence and implied warranty may not be exploited to

obviate the policy reasons for the exclusionary rule." 69 Mich App 375, 387.

Plaintiff sought to have the evidence admitted to buttress his argument that the warnings were inadequate. In light of the recent adoption of MRE 407 and the Court's continuing policy, the trial court's action was entirely proper.

## IV

The case is decided upon the instructional and evidentiary issues raised by plaintiff and is limited to its facts. We find no prejudicial or legal error on the part of the trial court.

It is conceded that the product was pure, but it is contended that the warning of its possible, if extremely rare, effect upon a hypersensitive person was inadequate. This is a negligence concept. Whether approached on the legal theory of implied warranty or of negligence, the proofs and the jury instructions would be the same in essential part. A duplication of instructions could be not only confusing but possibly misleading. The jury did not find the negligence urged by the plaintiff and essential to both theories. We find no legal error committed by the trial judge. Therefore, we affirm.

We also affirm the decision as to the issue of whether the court erred in precluding evidence of a subsequent change in the warning. The policy against allowing such evidence is well established in Michigan and continued in the new rules of evidence, specifically in MRE 407 which would be applicable in the requested new trial, so reversal on this point would be meaningless as well as improper. We find that the court did not err.

Affirmed.

FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, C.J.

KAVANAGH and WILLIAMS, JJ., concurred in the result.

LEVIN, J. *(dissenting)*. A drug manufactured by Squibb was administered to Shirley Smith during a routine hospital procedure. She had an atypical delayed anaphylactic reaction, went into shock and died. The complaint alleged that Squibb did not adequately warn of the possibility of such a reaction, and sought recovery under two theories— implied warranty and negligence.

The trial judge concluded that the plaintiff could not recover on the implied warranty theory, and instructed the jury solely on the negligence theory. The Court of Appeals found it unnecessary to decide whether that was error and affirmed, stating that on the facts of "this failure to warn case", "the standard and the proofs necessary to recovery are identical under both theories". This Court, adopting the same reasoning, also affirms.

We all agree that a product is defective unless the "manufacturer has provided adequate warnings". The Court concludes that in a failure to warn case the adequacy of the warnings is determined by whether the defendant exercised "reasonable care under the circumstances", the negligence standard. Since plaintiff cannot recover "unless Squibb was negligent", to have instructed the jury on plaintiff's implied warranty theory "could possibly have misled the jury into believing that plaintiff could recover on the warranty count even if Squibb were not negligent".

The Court thus holds that in a product liability action for failure to warn the focus of the inquiry is on the *manufacturer's conduct* although in all

other product liability cases the focus is on the *fitness of the product.*

To be sure, the standard by which a jury should be instructed to determine whether a product is fit evokes the same concept of "reasonableness" it is instructed to apply in determining whether a defendant's conduct was negligent. It does not follow that in a failure to warn case the *inquiry* is the same whether the theory is negligence or implied warranty or, as the Court of Appeals put it, it is "a distinction without a difference".

A manufacturer's implied warranty may require that it produce a product of higher quality than would result from the exercise of reasonable care; the product must be reasonably fit for the purpose intended. I would hold that the higher standard of quality, reasonable fitness for the intended purpose, applies to the adequacy of warnings accompanying the product as well as to the adequacy of the structure or design of the product itself.

# I

The drug was shipped in cases of 25 vials. "Warning slips were loosely packed within each case but were not attached to the vials themselves and no warning of any kind appeared on the vial labels."[1]

---

[1] *Smith v Squibb,* 69 Mich App 375, 379; 245 NW2d 52 (1976).

The Court states that the vial came with a " 'package insert wrapped' around it". The warning slips or package inserts, as they have been variously described, were not, however, shipped wrapped around each vial in such a manner as to insure that they would accompany the vial when it was removed from the shipping container:

*"The Court:* Mr. Statts, I'm not sure whether it's clear, it isn't clear to me. I'm not sure it's clear to the jury. These bottles of Renografin come in a package containing 25 bottles?

*"A. (By Mr. Statts):* Yes, your Honor.

*"The Court:* And the package has 25 of these inserts of the photostat of Exhibit 4, is that right?

"*A.* Yes, when we supplied this, we were supplying 25. I don't believe they're putting 25 in them today.

"*The Court:* Where do the inserts come? Are they in the bottle, are they on the bottle, are they on the box, if you know? How were they on or about the date in question, 1969? Am I making myself clear?

"*A.* Yes. In '69, I'm sure we had one around every bottle in the nested carton.

"*The Court:* All right, and if it was around every bottle, what held it?

"*A.* It would just be loosely packed there, as I recall it.

"*The Court:* A rubber band?

"*A.* No, I think the bottle was just put in and the label was enclosed around it.

"*The Court:* It would have to have something to hold it to the bottle, wouldn't it? It couldn't be very well pasted, otherwise you'd think you would tear it.

"*A.* The bottle was labeled, and then the insert would be in there, loosely packed.

"*Mr. Cooney (interposing):* Did you ever see a beer case, your Honor?

"*The Court:* I'm asking the witness. I've got enough problems with six lawyers.

"*A. (By Mr. Statts):* This is like eggs in a carton are packed, you know—

"*The Court:* It's not clear to me, sir. Maybe I'm dense, I'm sorry; and, by asking, I'm opening myself up to questions like Mr. Cooney just put to me; but I've seen boxes, I've seen bottles. Now, where is this insert? Is it in the bottle? You say it's loosely packed? What is it packed with? What holds it to the bottles?

"*A.* It's not—to my knowledge, it's not even stuck on the bottle with a tape or anything, except put in that compartment. Now, today, we put three or four, and we just include them in with the box.

"*The Court:* In other words, if you picked the bottle up, the label might fall off?

"*A.* The label wouldn't come off, but the insert is right in there. You can pull the insert out.

"*The Court:* The insert would not fall off?

"*A.* Well, the insert wasn't attached to the bottle.

"*The Court:* The insert was not attached to the bottle. Where was the insert?

"*A.* It was right down in, as I understand, just down in that compartment, just stuck down in there surrounding the bottle.

"*The Court:* Now, the bottle is not a magnet. A piece of paper is not a piece of steel. What holds it to the bottle?

"*A.* Nothing.

"*Mr. Cooney (interposing):* Get a beer case—

"*The Court:* I don't have a beer case.

"*Mr. Cooney:* All right, if you have this case, you have 24 little compartments like you would have for a bottle of beer. Your bottle

It was claimed that the warning was inadequate because i) the warning slip was not *attached* by a rubber band or some other means to the vial, ii) the warning slip did not describe *delayed* anaphylactic reaction to the drug or the treatment to be administered for such a reaction, iii) the drug had not been listed in the Physician's Desk Reference, and, iv) Squibb's representative had not discussed precautionary measures with the doctor who administered the drug in the instant case (who worked in the emergency room) as he had with other doctors (the radiology staff).

The judge instructed the jury to decide the adequacy of the warnings by an assessment of the reasonableness of Squibb's conduct, the negligence standard, and gave no instruction to consider the reasonableness of the warning itself:

"Now, getting back to the defendant, Squibb, at this time, I know that it is not easy for you or anybody else to determine from the case in chief, that is from the witnesses on the witness stand, whether or not they gave the proper warning to the medical profession and was a proximate cause. But consider all of the testimony, consider all of the circumstances and use your common sense in determining: did they *act* the way a prudent drug manufacturer would have acted under the knowledge they had and the circumstances that existed

---

goes down in there, you put the insert over the top of it, or you lay it on the top of it, depending upon who the packager is, who's making them up.

"*The Court:* I'd like him to be more exact.

"*Mr. Cooney:* Well, he can't be because his was back in 1969 that we're talking about, and this is to the best of his recollection what he knows about it. We don't have a 1968 carton, your Honor. There's no way to get one.

"*The Court:* I would like him to be more exact.

"*Mr. Cooney:* Well, he can't. To my knowledge, there are little cardboard sections for each one of these bottles. This was stuck down in around it, or laid on the top. One or the other, he doesn't recall, he said.

"*The Court:* All right, Mr. Brady."

on April 16, 1969. If they *acted* the way a prudent, careful drug manufacturer would have acted by putting the inserts in the box and the inserts referring to various articles to the medical profession, then they didn't do anything wrong." (Emphasis supplied.)[2]

The jury was thus instructed that unless it concluded that Squibb was blameworthy the warning was adequate.

## II

Often the answer to a question is determined by the way it is asked. It is one thing to instruct a jury to determine whether the manufacturer is blameworthy or negligent because he failed to conform to a standard of reasonable care; it is quite another to ask if the manufacturer did, in fact, adequately warn.

A jury, convinced that the manufacturer acted in good faith, might decline to find it "guilty" of negligence. If the question asked were whether the product is reasonably fit for the purpose intended (whether the user can reasonably expect it to be

_____

[2] The instruction continued:

"On the other hand, if they did not act the way the ordinary drug manufacturer would have acted, under the conditions that existed and the knowledge known on April 16, 1969 and it was a proximate cause of the injury and death, because of the lack of warning to the medical profession, then they would be negligent.

"Negligence is ordinarily defined as what the ordinary prudent person would have done under like or similar circumstances. Or the failure to do what the ordinarily prudent person would have done under like or similar circumstances.

"I have already told you that a corporation is the same as a person; therefore, it applies to a corporation, did they act the way an ordinarily prudent drug manufacturer would have acted; as you must remember, this case is odd to this extent; there is no claim at this time that the drug, Renografin 60, was not fit for the purpose for which it was used. There is no claim at this time as far as the drug, Renografin 60, is concerned for anything else with the exception of the failure to warn the medical profession."

free of the alleged defect), the same jury might conclude that the product was not reasonably fit—in the instant case that the warnings were not adequate.

In a product liability case the jury may find for the plaintiff without deciding that the manufacturer was to blame or at fault. The inquiry is not solely whether the manufacturer has done all that a reasonable manufacturer might have done but, rather, focuses on whether the product is reasonably fit for the purpose intended.

Where, as here, there may be dangers inherent in use of the product and therefore there is a duty to warn of known danger, the inquiry is not whether the manufacturer acted reasonably but whether the warnings actually given are reasonably adequate. Warnings, like structure and design, must measure up to the higher standard of quality implicit in the requirement that the product be reasonably fit for the intended purpose.

The negligence standard looks solely to the defendant's conduct and seeks to determine whether *he acted,* as the judge charged the jury in this case, in conformity to what the law expects of *him.* The implied warranty standard looks, rather, to the product and asks a different question—whether the *product* measures up to the standard which a user may reasonably expect of *it.* The policy of the law is to enforce the consumer's reasonable expectations of the product even though doing so might mean that more is required of the product than reasonable conduct by the manufacturer would produce.

A drug manufacturer is not subject to liability for anaphylactic reaction or for risks it does not know and cannot reasonably be expected to know. It is, however, subject to liability if the means of

notification of known risks does not actually notify and the jury concludes that more adequate means of notification can reasonably be expected.

### III

The cases referred to in the opinion of the Court do not address the issue—whether warnings can be inadequate (not reasonably adequate) notwithstanding the reasonable conduct of the manufacturer.[3]

The issue is addressed in *Hamilton v Hardy*, 37 Colo App 375; 549 P2d 1099 (1976). Plaintiff suffered a stroke which she claimed was caused by the malpractice of her physician in prescribing an oral contraceptive and the drug manufacturer's negligence and breach of express and implied warranties. A warning of possible adverse reactions was given which plaintiff claimed was inadequate in light of the reports of thrombotic diseases occurring in women taking such contraceptives. The case was submitted to the jury on plaintiff's negligence theory, but the judge "refused to instruct the jury on the theory of strict liability". *Id.,* p

---

[3] *McEwen v Ortho Pharmaceutical Corp,* 270 Or 375; 528 P2d 522 (1974), was an action grounded in negligence, not in implied warranty.

In *Basko v Sterling Drug, Inc,* 416 F2d 417 (CA 2, 1969), the judge gave the jury a hybrid instruction that the warnings must be proper and that there was a duty to make reasonable efforts to warn. Plaintiff did not complain, as here, that the jury was not instructed on the higher adequacy of the warning standard but, rather, that it had not been properly instructed on the lower, negligence, standard.

In *Sterling Drug, Inc v Yarrow,* 408 F2d 978 (CA 8, 1969), the manufacturer complained that it was being held to a standard higher than reasonableness and the court responded that the judge had in fact used the reasonableness standard. It did not decide that reasonable efforts to warn made the warnings actually given adequate.

In *Love v Wolf,* 226 Cal App 2d 378; 38 Cal Rptr 183 (1964), the issue was not the adequacy of the warning but whether the manufacturer's conduct tended to negate an otherwise adequate warning.

377. The verdict was in favor of the manufacturer. The Court of Appeals reversed.

As here, "[t]he trial court apparently perceived no difference between a negligence claim based on a failure to warn and a strict liability claim based on a failure to warn, and felt instructing on both theories would be duplicitous and confuse the jury". *Id.,* p 382.

The Colorado Court of Appeals stated that although the scope of the liability of a drug manufacturer (which produces a product that unavoidably causes adverse effects in some people) is determined by a standard of reasonableness, the plaintiff could recover although the jury found that the manufacturer had not been negligent in failing to give more adequate warnings if it concluded that the product was not reasonably fit without more adequate warnings:

"Although we agree the evidence which proves a failure to warn is the same under both theories, we disagree that the theories are identical. * * *

* * *

"* * * Under strict liability, the test is whether the failure of Searle to adequately warn of the potentially dangerous propensities of its product rendered that product unreasonably dangerous. It is of no import whether this drug manufacturer's warning comported with the warning a reasonably prudent drug manufacturer would have given. '[S]trict tort liability shifts the focus from the conduct of the manufacturer to the nature of the product.' 2 Frumer & Friedman, Products Liability, § 16A[4][e]." *Id.,* p 383.

The court stated the duty of a drug manufacturer thus:

"In general, for there to be recovery under Restatement (Second) Torts, § 402A, a plaintiff must demon-

strate that the defective condition of a product makes the product unreasonably dangerous. In the case of prescription drugs, such as Ovulen, which may be 'unavoidably unsafe' as that term is used in comment k of Section 402A, the requirements of 'defective condition' and 'unreasonably dangerous' have a different meaning than in the usual 402A sense. Such a drug is made in the way it was intended, contains no impurities, and is in the condition planned, but it proves to be dangerous because it is 'incapable of being made safe for [its intended and ordinary use].' Restatement (Second) Torts, § 402A, comment k. As to such products, *if* the product is accompanied by adequate warning, it is not defective and is not *unreasonably* dangerous. However, when not accompanied by an adequate warning, the product is defective, and thus may be unreasonably dangerous. The defect is not the dangerous propensities or side effects of the drug, but the failure to warn. Thus the question to be posed to the jury with regard to the strict liability issue is whether the manufacturer's failure to adequately warn rendered the product unreasonably dangerous without regard to the reasonableness of the failure to warn judged by negligence standards. On remand, the jury should be so instructed." *Id.,* pp 384-385. (Emphasis in original; citations omitted.)

The Oregon Supreme Court has also recognized that although the scope of the manufacturer's liability may be circumscribed by a standard of reasonableness, the plaintiff may nevertheless recover although the manufacturer was not negligent if the trier of fact decides that the warning was not reasonably adequate:

"In a strict liability case we are talking about the condition (dangerousness) of an article which is sold without any warning, while in negligence we are talking about the reasonableness of the manufacturer's actions in selling the article without a warning. The article can have a degree of dangerousness because of a lack of warning which the law of strict liability will not tolerate even though the actions of the seller were

entirely reasonable in selling the article without a warning considering what he knew or should have known at the time he sold it." *Phillips v Kimwood Machine Co,* 269 Or 485, 498; 525 P2d 1033, 1039 (1974).

In sum, a prescription drug may be unavoidably unsafe even though it is made in the way intended, contains no impurities, and is in the condition planned. If such a product is accompanied by adequate warning, it is not defective and is not *unreasonably* dangerous. However, when not accompanied by an adequate warning, the product is defective, and thus may be unreasonably dangerous. The defect is not in the dangerous propensities or side effects of the drug, but the failure to warn.

## IV

The jury was instructed that unless Squibb was negligent it was not subject to liability.

Although the jury concluded that Squibb had acted reasonably in not attaching the warning to the vial, in not providing a more complete warning, in not seeing to it that the drug was listed in the PDR, and in not having its representative discuss adverse effects with hospital staff members other than radiologists, it might nevertheless have concluded that the drug was not reasonably fit for its intended use without warnings more complete than were given.

The jury should have been instructed it could conclude that the product was not reasonably fit for its intended use unless a warning of the life-threatening risk of delayed anaphylactic reaction and of the treatment to be employed in the event of such reaction was *attached* to the vial or in some other manner communicated to physicians administering the drug.

I would reverse and remand for a new trial.[4]

---

[4] The Legislature has recently stated the public policy of this state to be that conformity to industry standards is admissible as evidence in a products liability action. The act applies to failures to warn as well as to other manufacturing defects. The bill as introduced would have made such conformity a complete defense. The Legislature has thereby made parallel conduct by other manufacturers relevant but not a complete defense in a product liability case.

The act provides:

"It shall be admissible as evidence in a products liability action that the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling was done pursuant to the generally recognized and prevailing nongovernmental standards in existence at the time the product was sold or delivered by the defendant to the initial purchaser or user." 1978 PA 495; MCL 600.2946; MSA 27A.2946 (approved by the Governor December 11, 1978).

The bill provided:

"It shall be a defense to a products liability action against the manufacturer or a seller of a product that the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling was done pursuant to the generally recognized and prevailing nongovernmental standards in existence at the time the product was sold or delivered by the manufacturer or seller to its initial purchaser or user. The defense provided for in this subsection shall not be available if the alleged liability is founded on the defendant's failure to conform to a governmental standard if the governmental standard is higher than the nongovernmental standard described in this subsection." House Bill 5689.