**Roman MARCINIAK, Julie Marciniak and Troy Marciniak, individually, and Julie Marciniak, as next friend of Heather Marciniak, a minor, Plaintiffs,**

v.

**MILES–CUTTER, an Indiana corporation, and Lederle Laboratories, a division of American Cyanamid Company, a New York corporation, jointly and severally, Defendants,**

**Blue Cross Blue Shield of Michigan, Intervening Plaintiff.**

No. 1:93–CV–442.

United States District Court, W.D. Michigan, Southern Division.

Dec. 16, 1994.

John C. Buchanan, Kevin J. O'Dowd, Buchanan & Bos, Grand Rapids, MI, for plaintiffs.

Jack E. Vander Male, Feikens, Vander-Male, Stevens, Bellamy & Gilchrist, P.C., Detroit, MI, for Miles–Cutter.

Wallson G. Knack, Warner, Norcross & Judd, Grand Rapids, MI, for Lederle.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This diversity action presents claims of negligence against defendant Miles–Cutter, and negligence and breach of implied warranty against defendant Lederle Laboratories. Specifically, plaintiff[1] alleges an actionable failure to warn by both defendants relative to their respective products: Konyne, a Factor IX complex manufactured by Miles–Cutter; and Amicar (chemical name, epsilon aminocaproic acid), an inhibitor of fibrinolysis manufactured by Lederle. Now before the Court are defendants' motions for summary judgment on all claims.

### I

Plaintiff suffers from a mild form of hemophilia B, a condition characterized by insufficient levels of a blood clotting factor known as Factor IX. In 1990, while in the hospital for surgical repair of a bilateral inguinal hernia, Dr. Mani Kurien, the hospital's hematologist, erroneously administered Konyne and Amicar concurrently to plaintiff, with dire results. Consequently, plaintiff filed a medical malpractice and negligence action in Mus-kegon County Circuit Court. After receiving a settlement of approximately $2.5 million in that case, plaintiff filed this products liability action.

The basis of plaintiff's claim is the allegation that the warnings contained in the package inserts for Konyne and Amicar were inadequate and directly responsible for Dr. Kurien's misuse of the products. Plaintiff argues that the "very heart of this issue is that Dr. Kurien looked to the product inserts specifically wondering whether he could co-administer Konyne and Amicar together." Plaintiff's Br. in Opposition, p. 4. Plaintiff acknowledges the generally held opinion among medical experts that these two products "absolutely should never be used together," but argues that Dr. Kurien "remembered that in certain circumstances, the two drugs had been used together." However, plaintiff concedes that even those who advocate the co-administration of the two products warn that it requires "great caution" and is limited to cases of "dental surgery, brain surgery and circumstances where the patient is bleeding excessively." Plaintiff's Br. in Opposition, p. 4 and n. 5. The record contains no evidence that such caution was exercised or that any of the alleged exceptions existed in plaintiff's case.

Plaintiff argues that Dr. Kurien's misuse of Konyne was foreseeable because the warning, which expressly states "epsilon aminocaproic acid should not be administered with Factor IX Complex as this may increase the risk of thrombosis," was found in the PRECAUTIONS section rather than the CONTRAINDICATIONS section.

Plaintiff correctly notes that the Amicar product insert does not address the issue of co-administration of Amicar and Konyne. Therefore, plaintiff argues, Dr. Kurien's reliance on a medical textbook edited by William J. Williams (hereinafter "Williams textbook") as the authority for his belief that the two products could be co-administered made Dr. Kurien's misuse foreseeable. However, the Williams textbook's discussion of such co-

---

**1.** Although Roman Marciniak's wife and children are named as co-plaintiffs, their claims are derivative. Therefore, the relevant facts relate solely to Mr. Marciniak and, throughout this opinion, use of the term "plaintiff" refers solely to him.

administration is strictly limited to "dental extractions" and, even then, instructs that the combined use of the products must be done serially, not concurrently (as was done by Dr. Kurien). On the very next page of the Williams textbook, in a subsection entitled "ADVERSE EFFECTS ASSOCIATED WITH FACTOR IX THERAPY," is the following warning: "Epsilon aminocaproic acid should not be administered with prothrombin complex concentrates," which is the generic definition of Konyne.

The following facts are undisputed: Dr. Kurien prescribed dosages of Konyne far in excess of the recommended levels, in direct contravention of the Konyne product insert and relevant medical literature; and Dr. Kurien prescribed Amicar without obtaining a definite laboratory diagnosis that plaintiff was suffering from primary fibrinolysis, again in direct contravention of the product insert. In fact, Kurien testified that he did not even think plaintiff had primary fibrinolysis.

In support of its motion for summary judgment, Miles–Cutter points to the express prohibition in its package insert against co-administration of these two products. Miles–Cutter also argues that the allegations in plaintiff's complaint that the product inserts misled Dr. Kurien to believe that co-administration of the two products was permissible are belied by Kurien's own testimony that he did so based on the Williams textbook.[2]

Both defendants, in support of their motions, rely heavily on the arguments put forth by plaintiff, through the same attorneys representing him in this action, in their prior medical malpractice and negligence action against Dr. Kurien, et al. in Muskegon County Circuit Court.[3] Defendants correctly point out that plaintiff's arguments and characterization of Dr. Kurien's professional behavior in that prior action are the exact opposite of the arguments put forth in this action. In various documents filed in the Muskegon County Circuit Court, plaintiff claimed that his injuries were directly and proximately caused by the negligent actions of Dr. Kurien, that it "is simply unthinkable, and in this case unforgivable that both drugs were administered simultaneously, to a patient undergoing an elective, minor surgery for hernia repair;" that "Dr. Kurien prescribed and administered Konyne and Amicar simultaneously, which should never be done under any circumstances, which was the direct and proximate cause of Roman Marciniak's injuries;" that had Dr. Kurien "performed proper research into the medications, he would have recognized that the combined use of Konyne and Amicar is clearly improper and a breach of the standard of care;" that "[a]ll the experts agree that it was a breach of the standard of care for Dr. Kurien to co-administer Konyne and Amicar, which are incompatible;" and that

> Nothing in the medical literature allows the simultaneous use of Amicar and Konyne. In fact, the package insert for Konyne ... clearly states:
>
> > Aminocaproic acid [Amicar] should not be administered with Factor IX complex [Konyne] as this may increase the risk of thrombosis.
>
> The only, narrow, exception, is *limited* to certain dental surgeries, and, even in the context of that extremely narrow exception, administration of the two drugs is serial and *not* simultaneous. Even then, there is a school of thought which opposes even the serial administration of the two drugs in that limited context. Even the hospital's own expert in this case could not find any authority to permit the simultaneous administration of Konyne and Amicar.

Miles–Cutter's Br. in Support, pp. 6–7; Lederle's Br. in Support, pp. 11–12. See also Lederle's Br. in Support, Ex. D.

## II

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter

---

2. This testimony also renders irrelevant the affidavit of plaintiff's expert, Steven Badylak, in regard to his opinion that the warnings in the package inserts were inadequate.

3. As already noted, that case resulted in a settlement of approximately $2.5 million.

of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

▪ The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the moving party is not required to expressly negate the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. The movant satisfies its initial burden merely "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

▪ Once the movant makes a sufficient showing of an absence of evidence to support the non-moving party's case, the non-moving party then assumes the burden of coming forward with evidence demonstrating a genuine issue of material fact. *Celotex,* 477 U.S. at 324–25, 106 S.Ct. at 2553. The non-moving party may not rest on the mere allegations contained in the pleadings, but, rather, must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1389 (6th Cir.1993).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. And an issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

▪ This Court has at least some discretion in evaluating the non-moving party's evidence and in determining whether that party's claim is plausible. *Barnhart,* 12 F.3d at 1389. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

### III

After discussion on the record with regard to the "learned intermediary doctrine," plaintiff's attorney stipulated at the hearing to dismissal of the originally stated claims in the complaint that defendants breached their duty by failing to warn the end-users of the two products. Therefore, the duty issue in this case deals solely with the reasonableness of the warning to members of the medical community.

### IV

This diversity action is controlled by Michigan law. *Bailey Farms, Inc. v. NOR–AM Chemical Co.,* 27 F.3d 188, 191 (6th Cir.1994).

■ In order to prevail on a negligence claim, the plaintiff must prove four elements:

1. The existence of a legal duty by defendant toward plaintiff;

2. the breach of such duty;

3. the proximate causal relation between the breach of such duty and an injury to the plaintiff; and

4. the plaintiff must have suffered damages.

*Lorencz v. Ford Motor Co.*, 439 Mich. 370, 375, 483 N.W.2d 844 (1992). Whether a duty is owed is a question of law for the Court to decide. *Glittenberg v. Doughboy Recreational Ind. (On Reh'g)*, 441 Mich. 379, 386, 491 N.W.2d 208 (1992).

> With regard to a failure-to-warn claim, a manufacturer is considered negligent if it fails to warn a purchaser about dangers associated with the intended use of the product as well as those dangers associated with foreseeable misuse.

*Gregory v. Cincinnati, Inc.*, 202 Mich.App. 474, 479, 509 N.W.2d 809 (1993). See also *Antcliff v. State Employees Credit Union*, 414 Mich. 624, 637–38, 327 N.W.2d 814 (1982). The precise duty owed is defined as the requisite standard of care, which, in cases where liability turns on the adequacy of a warning, is the standard of reasonable care under the circumstances. *Smith v. E.R. Squibb & Sons*, 405 Mich. 79, 90, 273 N.W.2d 476 (1979). The Michigan Supreme Court has expressly stated that "the scope of the duty [relative to the adequacy of a warning] is not unlimited": "For policy reasons, the law qualifies a manufacturer's duty to warn by declaring some risks to be outside that duty." *Glittenberg*, 441 Mich. at 387–89, 491 N.W.2d 208.[4]

## A. DEFENDANT MILES–CUTTER'S DUTY TO WARN

■ Plaintiff claims that Miles–Cutter's express prohibition against the co-administration of its product (Konyne) with epsilon aminocaproic acid was inadequate because of the opinion expressed in the Williams textbook that the two could be co-administered serially for dental extractions. Given the fact that plaintiff in this case underwent bilateral inguinal hernia repair, the Court concludes that Dr. Kurien's extrapolation from serial use of the two products in cases of dental extraction, especially in light of the express prohibition against simultaneous use of the two products, was not reasonably foreseeable. Plaintiff has failed to establish a genuine issue as to this factor and, therefore, has not demonstrated a breach of duty. Accordingly, his negligence claim against Miles–Cutter fails as a matter of law.

At the hearing, plaintiff's attorney informed the Court that she was in possession of additional medical articles indicating that concurrent administration of Konyne and Amicar was not strictly limited to the three exceptions already identified. The Court allowed plaintiff's attorney to file these articles but, after reviewing them, the Court concludes that they are as unavailing to plaintiff's position as is the Williams textbook already discussed.

One article[5] describes three case histories, two of which deal with dental extractions and the other one with excessive, prolonged bleeding, in which Konyne and epsilon aminocaproic acid were co-administered.[6] Near the end of the article, in the subsection titled "Discussion," are the following statements:

> The manufacturer now recommends that Autoplex[7] not be used in conjunction with

---

4. The Michigan Supreme Court noted that "[i]f there were an obligation to warn against all injuries that conceivably might result from the use or misuse of a product, manufacturers would find it practically impossible to market their goods." *Glittenberg*, 441 Mich. at 388, 491 N.W.2d 208.

5. The title of this article is "Activated Factor IX Complex in Treatment of Surgical Cases of Hemophilia A with Inhibitors." This article and the others subsequently cited in this opinion are at-

tached as exhibits to plaintiff's post-hearing response brief.

6. The articles do not specify whether Amicar was the particular brand of epsilon aminocaproic acid that was used.

7. Autoplex is an activated Factor IX complex, while Konyne is simply a Factor IX complex. The precise meaning of the modifier "activated" is not defined in the article, but it is irrelevant for purposes of this opinion because Autoplex and Konyne were used interchangeably.

EACA [epsilon aminocaproic acid] because of the possibility of DIC or thrombotic complications. EACA should not be used with Autoplex until the safety of such combination has been investigated further.

The next article [8] contains a mention of the concurrent administration of Factor IX concentrates and EACA solely in the context of dental extractions.

Surprisingly, the next exhibit attached to plaintiff's post-hearing response brief is a letter written to The Lancet, a British medical publication, describing a case wherein a man who underwent a prostatectomy received co-administered Factor IX concentrates and EACA and post-operatively developed "a deep vein thrombosis which was confirmed by phlebography." The doctors immediately halted the concurrent therapy.

Of the remaining exhibits, two also deal solely with the use of epsilon aminocaproic acid in dental and oral surgery.[9] The third [10] contains a statement that weighs heavily against plaintiff's argument that the exceptions to the prohibition against concurrent administration of Konyne and Amicar are less limited than previously described:

> The antifibrinolytic agent epsilon aminocaproic acid was employed in the treatment of episodes described above because of its established benefit for hemophilic bleeding involving nasal and oral mucosa.

Having considered the additional evidence submitted by plaintiff, the Court reaffirms its conclusion that Kurien's unwarranted extrapolation in regard to the concurrent use of Konyne and Amicar was not reasonably foreseeable. Holding the manufacturer responsible for Dr. Kurien's blatant and unforeseeable error of judgment would amount to an imposition of strict liability, a standard which Michigan courts have expressly and consistently refused to impose. See *Prentis v.*

*Yale Mfg. Co.,* 421 Mich. 670, 681–83, 365 N.W.2d 176 (1984).

## B. DEFENDANT LEDERLE'S DUTY TO WARN

■ Plaintiff correctly notes that the Amicar product insert does not contain an express prohibition against its concurrent use with Konyne (or other Factor IX concentrates). However, plaintiff's claim that Lederle's failure to warn of the dangers associated with such concurrent use is actionable is based on his allegation that it was reasonably foreseeable, in light of relevant medical literature, that such concurrent use would occur. As the Court has already discussed, the medical evidence submitted by plaintiff did not make Dr. Kurien's actions in this particular case foreseeable. Therefore, as a matter of law, Lederle did not breach a duty to warn in regard to this particular plaintiff.

■ Furthermore, and more saliently, even assuming Lederle did breach its duty to warn, plaintiff's claim still fails because he has not established a genuine issue as to the essential element of proximate cause:

> To establish a prima facie case that a manufacturer's breach of its duty to warn was a proximate cause of an injury sustained, a plaintiff must present evidence that the product would have been used differently had the warnings been given.

*Mascarenas v. Union Carbide Corp.,* 196 Mich.App. 240, 251, 492 N.W.2d 512 (1992). The evidence shows that Dr. Kurien ignored the express prohibition against concurrent use in the Konyne product insert, that he ignored the instruction on proper dosage levels in the Konyne product insert, that he ignored the specific instructions in the Amicar product insert not to use it unless there was a confirmed laboratory diagnosis of primary fibrinolysis,[11] and that he ignored the

8. The title of this article is "Epsilon Aminocaproic Acid in Hemophiliacs Undergoing Dental Extractions: A Concise Review."

9. The titles of these articles are "The Use of Epsilon–Aminocaproic Acid for the Management of Hemophilia in Dental and Oral Surgery Patients" and "Epsilon–Aminocaproic Acid Therapy for Dental Extractions in Haemophilia and

Christmas Disease: A Double Blind Controlled Trial."

10. The title of this article is "Hemorrhage Involving the Upper Airway in Hemophilia."

11. Indeed, as previously noted, Dr. Kurien testified that he did not even think plaintiff had primary fibrinolysis, which is the only condition Amicar is indicated for.

warnings against concurrent use of Konyne and Amicar (and other similar products) in the same medical literature cited by plaintiff's attorney. There is no evidence whatsoever in the record that Dr. Kurien would have used Amicar differently even had there been a warning in its product insert against the concurrent use of it and Konyne.

For the foregoing reasons, plaintiff's negligence claim against Lederle fails as a matter of law.

Plaintiff's failure to establish a genuine issue of material fact in regard to its negligence claim is also fatal to his breach of implied warranty claim. In the context of a failure to warn claim, "breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements." *Prentis*, 421 Mich. at 692, 365 N.W.2d 176; *Squibb*, 405 Mich. at 88, 273 N.W.2d 476.

## CONCLUSION

Having considered all the pleadings and evidence in support, and having drawn all justifiable inferences in favor of the non-moving party, the Court concludes that no reasonable jury could return a verdict for the non-moving party. Therefore, defendants are entitled to judgment as a matter of law, and because the underlying claims fail, so too do the derivative claims of the co-plaintiffs.

An order consistent with this opinion shall issue forthwith.

## JUDGMENT ORDER

Pursuant to the Court's memorandum opinion of even date,

**IT IS ORDERED** that defendants' motions for summary judgment as to all claims are **GRANTED.**