Richard CASWELL, Plaintiff,

v.

AIR PRODUCTS AND CHEMICALS, INC., Defendant.

Civil No. 98–40013.

United States District Court,
E.D. Michigan,
Southern Division.

July 30, 1999.

David B. Timmis, Vandeveer Garzia, Birmingham, MI, for plaintiff.

*MEMORANDUM OPINION AND OR-DER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDG-MENT*

GADOLA, District Judge.

Presently before the Court is a motion for summary judgment filed by defendant Air Products and Chemicals, Inc. on June 3, 1999. This is a products liability action, arising out of injuries sustained by plaintiff on September 6, 1996, during the course of his employment with Yale–South Haven, Inc. At the time of the accident, plaintiff was operating a "deflashing tumbler," a machine which utilizes liquid nitrogen and through tumbling action removes excess material from molded rubber parts. The tumbler at issue was manufactured by defendant corporation. On June 24, 1999, plaintiff responded to defendant's motion. A reply brief was filed by defendant on July 7, 1999. In addition, on July 9, 1999, intervening plaintiff Liberty Mutual Insur-ance Company filed a supplemental response to defendant's motion for summary judgment.

For the reasons set forth below, this Court will grant defendant's motion for summary judgment.

**I. Factual Background**

On September 6, 1996, plaintiff Richard Caswell was injured while operating a Model 2125 Cryo–Trim deflashing tumbler, a machine manufactured by defendant Air Products and Chemicals, Inc. (hereinafter "Air Products"). As mentioned above, the tumbler utilizes liquid nitrogen and through tumbling action removes excess material from molded parts. After the tumbling is completed, a very large and heavy door is lifted up and the parts are removed.

On the day of the accident, plaintiff was removing parts from the machine when the door fell on him. The door pinned plaintiff in the body of the deflasher, head first and up to his hips. Despite his screams for assistance, no one was able to hear him due to the fact that plaintiff was trapped head first within the deflasher.

After a period of time, plaintiff reports that he was able to extricate himself from the machine. Plaintiff sustained back inju-ries, specifically, a "circumferential bulge of the annulus fibrosis at the L4–5 level and a herniated disc on the left side of the L5–S1 level producing posterior displace-ment of the exiting nerve root sleeves and obliteration of the left epidural fat plane." Exh. A to plaintiff's brief in response to defendant's motion for summary judgment.

The parties are in dispute regarding the cause of the accident. Plaintiff has prof-fered expert testimony of Neal Hepner, a mechanical engineer. Hepner testified at his deposition to the effect that the de-flashing tumbler was negligently designed due to the faulty nature of the latching mechanism. Exh. C to plaintiff's brief in response, p. 41. The latching mechanism is designed to hold the door in position,

but in this case allegedly failed to do so. Hepner found that the panel over which the latching mechanism is placed is capable of becoming iced over due to the nature of the operations performed by the tumbler and the failure of the sealing to prevent cold air from escaping. *See id.,* pp. 63–64. In addition, plaintiff's expert opined that the spring on the right side of machine could easily become disengaged because there is insufficient force to hold the latch in the engaged position. *See id.,* p. 46.

Plaintiff testified that there was frost on the latch pin on the date of the accident. *See* Exh. D to plaintiff's brief in response, p. 70. According to expert witness Hepner, this could have prevented proper engagement of the latch hook. Plaintiff's position is that the allegedly ineffective spring and latch mechanism, as well as the likelihood of frost, "are significant dangerous conditions directly resulting from the design of the machine." Plaintiff's brief in response, p. 4.

Defendant, on the other hand, disputes plaintiff's theory that a design defect caused plaintiff's injuries. Defendant maintains that "there is an equally plausible explanation as to why the accident happened," namely, that plaintiff "simply failed to properly engage the latches by his own action or inaction." Defendant's brief in support of motion for summary judgment, p. 19. Defendant points out that plaintiff testified that he observed both latches fully engaged over the latch pins prior to his accident. *See* Exh. A to defendant's brief, pp. 70, 76–78 and 103. In addition, defendant argues that plaintiff's expert admitted that he had no evidence that the notch was *not* fully sealed over the pin just prior to plaintiff's accident. *Id.,* 64–65.

Defendant cites portions of expert witness Hepner's testimony in support of defendant's position that some other factor, besides a manufacturing or design defect, caused plaintiff's injuries. *See* Exh. G to defendant's brief. Hepner spent 3 to 3½ hours inspecting the machine on February 3, 1997, almost five months after the accident. *Id.,* p. 23. On the date of the inspection, Hepner found that the door of the deflasher held very securely and would not drop down on its own. *Id.,* pp. 68–69. Hepner considered it impossible to recreate the accident. *Id.,* p. 74. The expert witness also observed *modifications* to the door latching arms, which were not shown in defendant-manufacturer's machine drawings. *Id.,* pp. 37–38. Specifically, Hepner observed that an extension of the bracket on the left side had been welded onto the left side. *Id.* Plaintiff's expert does not know who made the modification or precisely when it was made, but speculated that it could have been made by plaintiff's employer after the accident occurred on September 6, 1996. *See id.,* pp. 39, 43, 86–87.

Intervening plaintiff Liberty Mutual Insurance Company (hereinafter "Liberty Mutual") filed its own response brief on July 9, 1999. In that brief, plaintiff Liberty Mutual recounts the testimony of defendant's named expert, Glenn Stroup, an industry engineer of supporting equipment and equipment process technology. Stroup inspected the deflashing tumbler in question. He stated that "[t]hrough deterioration over the years, [insulation in the interior of the barrel structure] pulverized and was gone." Exh. A to Liberty Mutual's brief, p. 57. Stroup's inspection found no insulation in the annular space between the walls of the tumbler unit. In response to a question as to the possible hazard to an operator which such a condition posed, the expert witness testified as follows:

> Hazard in the form of touching cold surfaces with bare skin is the first and most obvious. The second hazard would be [the operator's] failure to be able to properly open and/or close the door and lock it in a given open or closed position and then try to continue to operate that piece of equipment. Those are the two primary drawbacks.

\* \* \* \* \* \*

It would create an interference failure that would either not allow the door to even physically move or the latch to properly engage.

Exh. E to Liberty Mutual's brief, p. 75.

Intervening plaintiff Liberty Mutual claims that defendant never provided warnings to plaintiff or his employer regarding the risk of the icing condition. Stroup testified that "there is no written statement" to the effect that lack of insulation may result in an icing condition which could cause an interference condition with the latch pin. *See* Exh. G to Liberty Mutual's brief, pp. 77–78.

On January 13, 1998, plaintiff initiated the instant action against defendant Air Products. The complaint contains two counts. Count I alleges a state law claim of negligence premised on failure to warn, design defect, manufacturing defect, negligent maintenance, and failure to equip the machine with available modern devices and appurtenances. Count II alleges a state law claim of breach of implied warranty of fitness for intended uses and purposes. Federal jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

## II. Legal Standards

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evalu-

ating a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. See *U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R.Civ.Proc. 56(e); *Gregg*, 801 F.2d at 861. To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

Defendant moves for summary judgment on the various claims presented in plaintiff's complaint. The claims may be divided into two groups. The first five

claims are premised on negligence and the sixth is premised on a breach of warranty theory, to wit: (1) negligence due to a design defect; (2) negligence due to a manufacturing defect; (3) negligence due to failure to warn of a dangerous condition; (4) breach of duty to equip the deflashing tumbler "with available modern devices and appurtenances," construed by defendant as breach of a post-sale duty to modify; (5) negligence due to improper maintenance; and (6) breach of implied warranty of fitness for intended purposes. Each of these claims will be addressed hereinbelow *seriatim.*

### A. Plaintiff has failed to establish a prima facie case of design defect.

 It is well-settled under Michigan law that "[a] plaintiff who claims that a product was defectively designed has the burden of producing evidence of the magnitude of the risk posed by the design, alternatives to the design, or other factors concerning the unreasonableness of the risk of a particular design." *Lawrenchuk v. Riverside Arena, Inc.,* 214 Mich.App. 431, 435, 542 N.W.2d 612 (1995) (citing *Owens v. Allis–Chalmers Corp.,* 414 Mich. 413, 429–432, 326 N.W.2d 372 (1982)). Plaintiff is required to produce expert testimony demonstrating that the product at issue constituted an unreasonable risk to users. *Id.* "In determining whether a defect exists, the trier of fact must balance the risk of harm occasioned by the design against the design's utility." *Id.* at 435–36, 542 N.W.2d 612.

 Defendant argues that plaintiff has failed to set forth a prima facie case of design defect. First, defendant maintains that plaintiff's expert Hepner is not a design expert, never having designed or obtained a patent for a machine analogous to the deflashing tumbler in question. Second, defendant argues that Hepner's sole opinion relating to an alternative design of the machine is that a proper spring should have been put on both sides of the machine. *See* Exh. G to

plaintiff's brief, p. 123. Hepner was unable to say whether the springs that were on the machine he inspected more than five months after the accident were the same as the springs sold with the machine. According to defendant, plaintiff has no evidence that the alleged defect was attributable to defendant's design. Third and finally, defendant argues that Hepner gave no testimony as to the magnitude of the risk allegedly posed by the design or other factors relating to the reasonableness of the risk of a particular design.

In response, plaintiff maintains that Hepner is an extremely qualified mechanical engineer and is an expert in design. Although Hepner did testify extensively that a proper spring should have been put on both sides, plaintiff maintains that this was not Hepner's only suggestion for an alternative design. According to plaintiff's counsel, as alleged in plaintiff's responsive brief, Hepner also "believes" that the machine should have been designed so that an operator was not required to pull down the door to determine if it was latched. On page 119 of Hepner's deposition testimony, the expert witness does briefly mention that he does not think it "reasonable to ask" an operator to pull on the door to determine if it is latched. *See* Exh. C to plaintiff's brief in response, p. 119. However, no "alternative design" was put forward nor was the alleged requirement that the operator pull on the door characterized as a "design defect." *See id.*

In addition, plaintiff's counsel further contends that Hepner "believes" that another alternative design incorporating an interlock system is available, as well as an alternative means of insuring that the latching pin does not become iced over during operation. Unfortunately, plaintiff does not cite and the Court does not find any indication in Hepner's deposition testimony that Hepner ever advanced such theories. These are theories unsupported by the record and by Hepner's deposition tes-

timony. The record is devoid of evidence to support viable alternative designs.[1]

■ In the answers to interrogatories, plaintiff further reports that Hepner allegedly determined that the defects in the design of the machine created "an unreasonable danger of disengagement of the latch in the open position" and that "given the size and weight of the door to the tumbler, contact of same with a body part is likely to result in serious injury." *See* Exh. E to plaintiff's brief in response. In addition, plaintiff's counsel has submitted a conclusory affidavit signed by Hepner, stating that "[d]efendant was negligent as the result of its failure to warn of the insufficient tension created by the springs ... [and] negligent as the result of its failure to include a warning that there was no lock to assure that the latching mechanism would not become disengaged...." *See* Aff. of Neal Hepner filed July 21, 1999. However, these are legal conclusions which are certainly not tantamount to evidence supporting plaintiff's theories.

The Court finds that plaintiff has not met his burden of demonstrating the existence of a design defect. Plaintiff has not produced evidence of the magnitude of the risk posed by defendant's design or of other factors concerning the reasonableness of the risk of a particular design. Although plaintiff's expert Hepner focuses on the insufficient tension in the spring on the left side of the machine, Hepner admits that the spring may not be the original spring sold by defendant, but instead

may have been added after sale by plaintiff's employer. *See* Exh. G to defendant's brief, pp. 45 and 113. As to the existence of frost preventing proper engagement of the latch hook, defendant argues that at most this shows lack of proper maintenance. There has been no evidence produced which would establish that the alleged defects in the spring and/or door seals were attributable to defendant or were a design defect.

In *Owens v. Allis–Chalmers Corp.*, *supra*, the Michigan Supreme Court held that a plaintiff had failed to present a prima facie case of design defect. In that case, plaintiff's husband was killed while operating a forklift manufactured by defendant. The court concluded that the machine was not rendered unreasonably dangerous by the manufacturer's failure to include seat belts or other driver restraints. In reaching its decision that plaintiff had failed to set forth a prima facie case, the court noted that plaintiff failed to present evidence concerning both the magnitude of the risks involved and the reasonableness of the proposed alternative design.

Just as in *Owens*, plaintiff in the instant case has failed to put forth any evidence raising an issue of fact concerning any unreasonable risk to plaintiff existing at the time of the design of the tumbling machine. Plaintiff is only able to make the unsupported allegation that the machine as designed created "an unreasonable danger of disengagement of the latch in the open

---

**1.** At his deposition, expert witness Hepner expressed *only* two possible explanations relating to the cause or causes of plaintiff's accident. As discussed, Hepner first speculates that the door may have fallen due to insufficient spring tension. *See* Depo. of Neal Hepner taken Apr. 28, 1999, pp. 84–85, attached as Exh. G to defendant's brief in support of motion for summary judgment. Second, Hepner makes mention of the lack of adequate insulation, causing ice formation on the latch pin which may have prevented engagement of the latch. *See id.*, pp. 93–94. This second possible explanation of the cause of plaintiff's accident is discussed *infra*. With

respect to alternative designs, the following colloquy appearing on page 123 of Hepner's deposition is instructive:

Q: ... what is the alternative design, if any, that you have devised that you want to share with us today?
A: Well, the proper spring. A proper spring.
Q: That we've talked about already?
A: Yes.
***
Q: *Anything else* ?
A: *No.*
*Id.*, p. 123 (emphasis added).

position." The presence of frost and the insufficiency of the left spring are not sufficient to raise a genuine issue of material fact as to a design defect. As defendant points out, the instruction manual which accompanied the sale of the machine provided that proper maintenance includes replacement of the door seal. *See* Exh. H to defendant's brief, p. 30. Moreover, plaintiff's expert does not know and cannot prove whether the spring in question was even a part of the original machine as sold by defendant to plaintiff's employer. Hepner admits that the spring may have been added by the employer subsequent to sale. *See* Exh. G to defendant's brief, pp. 45 and 113.

Furthermore, although plaintiff maintains that Hepner "believes" certain alternative designs would present a more reasonable risk to users, plaintiff fails to cite any pages of Hepner's deposition testimony wherein the expert discusses these alleged beliefs. Plaintiff's speculation regarding other available designs is not tantamount to evidence that alternative designs exist sufficient to meet plaintiff's burden of establishing a prima facie case of design defect. As a result, plaintiff's claim of negligence premised on the existence of a design defect will be dismissed.

## B. Plaintiff has failed to establish a prima facie case of manufacturing defect.

■ Defendant next argues that plaintiff has failed to establish a prima facie case of manufacturing defect based on the negligence of defendant. It is well-established that under a negligence theory, "plaintiff must prove that the defect was caused by the manufacturer's negligence." *Smith v. E.R. Squibb & Sons, Inc.*, 405 Mich. 79, 89, 273 N.W.2d 476 (1979).

Defendant maintains that plaintiff has failed to show that defendant negligently manufactured the deflashing tumbling machine. Defendant argues that plaintiff's expert assumes that the spring on the left side was different on the date of the accident than it was on the date of inspection. The expert further assumes that on the day of the accident, the spring on the left side was identical to the spring on the right side. Hepner then concludes that there was a defect because the spring did not exert sufficient force to keep the latch notches engaged over the latch pins to keep the door locked open. However, defendant notes that Hepner is unable to say whether the springs which were on the machine at the time of the accident were the same springs supplied by defendant corporation more than 14 years earlier. Therefore, according to defendant, plaintiff has no evidence that the condition of the springs, as assumed by his expert, was attributable to defendant's alleged negligence.

With respect to the frost attributable to the door seal, defendant further argues that there is also no evidence that this alleged defect was caused by defendant's negligence. As mentioned above, the instruction manual which accompanied the sale of the machine to plaintiff's employer included instructions relating to the replacement of the seals. See Exh. H to defendant's brief. Moreover, the instruction manual provides that "[t]he seal should be checked ... on a weekly basis for rips, gashes or damages of any type that might necessitate replacement." *Id.*, p. 30. In addition, plaintiff testified that he had written up the door seals for maintenance on two occasions prior to his accident. *See* Exh. A to defendant's brief, pp. 71–72.

Plaintiff cites *Moning v. Alfono*, 400 Mich. 425, 254 N.W.2d 759 (1977), for the proposition that a manufacturer owes a consumer an obligation to avoid negligent conduct and the obligation extends to persons within the foreseeable scope of the risk. Plaintiff asserts that expert witness Hepner's conclusion that the spring on the left side viewed on the day of inspection was different from the spring on the machine on the day of the accident is not a mere assumption but supported by three

findings: (1) that plaintiff told Hepner that both sides were the same on the date of the accident; (2) that as the machine currently exists, the latch could not engage once it was engaged on the pin; and (3) that there were indications made by plant employees that this modification was made after the date of the accident. *See* plaintiff's brief, pp. 7–8. With regard to the frost accumulation on the pin, plaintiff argues that the seals which the machine utilizes to prevent cold air from escaping from inside the tumbler do not adequately accomplish this task.

The Court finds that plaintiff has failed to raise a genuine issue of material fact as to the existence of a manufacturing defect attributable to the negligence of defendant. Assuming *arguendo* that all plaintiff's allegations are true, plaintiff still has not met its burden of establishing a prima facie case of defendant's negligence. Even if plaintiff's employer made subsequent modifications to the springs on the locking mechanism after the accident, this does not prove that there were any defects in the springs which were supplied by defendant 14 years earlier. There is no evidence that the modifications noted by Hepner were required by any act or omission of defendant, particularly in the absence of any proof that defendant supplied the allegedly defective springs. As to plaintiff's argument that the door seal allowed cold air to escape, it is apparent that this was clearly a maintenance responsibility of plaintiff's employer. It could not reasonably be argued that defendant, who had sold the machine 14 years earlier, had any responsibility to maintain the machine. Plaintiff has not come forward with any agreement between the parties manifesting an obligation on the part of defendant to so maintain the deflashing tumbler.

As an additional argument, plaintiff states that this was not the first incident of the door unexpectedly coming down. *See* plaintiff's brief, p. 8. At his deposition, plaintiff testified that he was aware of two prior occasions where a door had closed during the unloading of deflashing tumbler. *See* Exh. D to plaintiff's brief, p. 49. However, plaintiff does not present any evidence establishing that the two other alleged incidents occurred under similar circumstances. As defendant points out, those incidents may have occurred for some other reason not attributable to defendant, because of operator error as opposed to any defect of the machine. The Court finds that the mere fact that other incidents occurred is not evidence, in and of itself, of a manufacturing defect attributable to defendant.

Accordingly, plaintiff's claim of negligence premised on the existence of a manufacturing defect will be dismissed.

### C. Plaintiff has failed to establish a prima facie case of negligent failure to provide adequate warnings.

A negligent failure to warn may constitute a product defect, but the alleged failure to warn must be causally connected to the injuries suffered by plaintiff. *See Skinner v. Square D. Co.*, 445 Mich. 153, 159, 516 N.W.2d 475 (1994) (citing injury *Mulholland v. DEC Int'l*, 432 Mich. 395, 415, 443 N.W.2d 340 (1989)). "While plaintiff bears the burden of proof, the plaintiff is not required to produce evidence that positively eliminates every other potential cause." *Id.* Instead, what is required is proof of some "logical sequence of cause and effect" between the failure to warn of a dangerous condition and the injuries sustained. *See id.* at 159–60, 516 N.W.2d 475.

Defendant argues that plaintiff has failed to put forth any evidence to suggest that the two distinctive springs observed by Hepner 14 years *after* defendant sold the machine were supplied by defendant. Defendant maintains that there is no evidence to indicate that there was insufficient tension in the springs when the machine was sold, and therefore no duty to warn of a non-existent condition. Furthermore, plaintiff has proffered no evidence that defendant ever knew or

should have known of the insufficient spring tension. Finally, defendant contends there is no proof of any causal connection between defendant's failure to warn and plaintiff's injuries.

Plaintiff, in response, argues that there were no warnings whatsoever on the subject machine regarding either the potential frosting or the potential lack of sufficient tension in the springs or the lack of a latch lock. Plaintiff cites *Miller v. Caterpillar Tractor Co.*, 697 F.2d 141 (6th Cir.1983), for the proposition that Michigan law requires a manufacturer to adequately communicate the nature of the risk to foreseeable users of a product. Plaintiff, as an operator of the deflashing tumbler, was a foreseeable user and thus, according to plaintiff, should have been provided with adequate warnings on the machine itself. Plaintiff contends that the "35 page instruction manual with complicated diagrams and technical information" was insufficient.

The Court finds that plaintiff has failed to state a prima facie case for negligent failure to warn. No evidence has been submitted which would show a causal connection between defendant's alleged failure to warn and plaintiff's injuries. As the Michigan Supreme Court explained in *Skinner v. Square D. Co.*, 445 Mich. 153, 516 N.W.2d 475 (1994),

> [u]nder Michigan products liability law, as part of its prima facie case, a plaintiff must show that the manufacturer's negligence was the *proximate* cause of the plaintiff's injuries. *Brisboy v. Fibreboard Corp.*, 429 Mich. 540, 547, 418 N.W.2d 650 (1988) (emphasis added). We have previously explained that proving proximate cause actually entails proof of two separate elements: (1) cause in fact, and (2) legal cause, also known as "proximate cause." *Moning v. Alfono*, 400 Mich. 425, 437, 254 N.W.2d 759 (1977).
> The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury

would not have occurred. Prosser & Keeton, Torts (5th ed.), § 41, p. 266. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. *Moning* at 439, 254 N.W.2d 759. *See also Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 586, n. 13, 513 N.W.2d 773 (1994). A plaintiff must adequately establish cause in fact in order for legal cause or "proximate cause" to become a relevant issue.

*Id.* at 162–63, 516 N.W.2d 475.

In *Skinner*, plaintiff brought a products liability action against defendant-manufacturer, alleging that defects in a switch caused the electrocution death of plaintiffs' decedent. The Michigan Supreme Court affirmed the lower court's granting of summary disposition based on lack of a showing of cause in fact, i.e., failure to show that "but for" the defendant's actions, the plaintiff's injury would not have occurred. *See id.*

In the case at bar, plaintiff has presented speculation that the accident occurred due to defendant's failure to warn of inadequate spring tension, among other factors. However, this assertion plainly fails the "cause in fact" requirement. As the *Skinner* court further expounded:

> [w]hile plaintiffs may show causation circumstantially, the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation:
>
> > That there was no eyewitness to the accident does not always prevent the making of a possible issue of fact for the jury. But the burden of establishing proximate cause ... always rests with the complaining party, and no presumption of it is created by the mere fact of an accident. [*Howe v. Michigan Cent R. Co.*, 236 Mich. 577, 583–584, 211 N.W. 111 (1926), cert.

den. 274 U.S. 738, 47 S.Ct. 576, 71 L.Ed. 1317 (1927).]

To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not *mere speculation*. In *Kaminski v. Grand Trunk Western R. Co.*, 347 Mich. 417, 422, 79 N.W.2d 899 (1956), this Court highlighted the basic legal distinction between a reasonable inference and impermissible conjecture with regard to causal proof:

> "As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

We want to make clear what it means to provide circumstantial evidence that permits a reasonable inference of causation. As *Kaminski* explains, at a minimum, a causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.

*Skinner*, 445 Mich. at 163–65, 516 N.W.2d 475 (emphasis added).

 Just as in *Skinner*, plaintiff has presented *one possibility* to explain the falling of the tumbler door. However,

it is clear from *Skinner*, and the cases cited therein, that this is insufficient to satisfy the cause in fact requirement. "[C]ausation theories that are mere possibilities or, at most, equally [as] probable as other theories do not justify denying defendant's motion for summary judgment." *Id.* at 172–73, 516 N.W.2d 475. Moreover, an expert opinion based only upon a hypothetical situation is not enough to demonstrate a legitimate causal connection between a defect and injury. *Jordan v. Whiting Corp.*, 396 Mich. 145, 150–51, 240 N.W.2d 468 (1976); *see also Green v. Jerome–Duncan Ford*, 195 Mich.App. 493, 495, 491 N.W.2d 243 (1992) ("[a]n expert need not rule out all alternative causes of the effect in question, but he must have an evidentiary basis for his own conclusions").

In the present case, plaintiff's expert's theory of causation is based upon mere conjecture and has not been shown to be more probable than other equally plausible theories. As defendant suggests, there is an equally plausible explanation that plaintiff simply failed to properly engage the latches by his own action or inaction. In the alternative, there is an equally plausible explanation as to why the accident happened that is not attributable to any negligence of defendant, i.e., negligence on the part of plaintiff's employer in maintaining the deflashing tumbler machine.

Based on the considerations set forth above, plaintiff's claim of negligence premised on the failure to warn will be dismissed.

**D. Plaintiff has failed to establish a prima facie case of negligent failure to equip the deflashing tumbler with available modern devices and appurtenances.**

Defendant construes plaintiff's next claim—failure to equip the tumbler "with available modern devices and appurtenances"—as alleging a post-sale duty to modify the machine in question. According to defendant, under Michigan law, "the

only post-manufacture duty imposed on a manufacturer has been the duty to warn when the defect existed at the point of manufacture, but for some reason was undiscovered by both the manufacturer and the customer." *Gregory v. Cincinnati Inc.*, 450 Mich. 1, 17, 538 N.W.2d 325 (1995). Courts have referred to such situations as involving a "latent" defect.

■ Plaintiff responds that defendant's argument regarding lack of duty to make post-sale modifications is not relevant. Plaintiff instead is bringing a claim "that the machine was not properly equipped at the time of sale with the available modern safety devices and appurtenances available at the time." Plaintiff's brief in response, p. 11. Plaintiff argues that a shorter spring allowing more tension was available in 1975 when the machine was manufactured and in 1982 when it was sold to plaintiff's employer. Plaintiff further maintains that the manufacturer could have used a bolt device, or installed better seals to more adequately prevent cold air from escaping. According to plaintiff, defendant "simply failed to take adequate precautions." *Id.*

The Court must reject plaintiff's claim based on negligent failure to equip. Even assuming that plaintiff was referring to a pre-sale duty on behalf of defendant to equip the machine in question with modern devices, this claim is merely plaintiff's design defect claim in another guise. As discussed *supra,* any theory of liability based upon negligence must raise a genuine issue of material fact as to cause in fact. In the instant case, plaintiff has produced no evidence to show that plaintiff's accident would not have happened *but for* defendant's failure to equip the machine with modern devices. As mentioned previously, there are equally plausible reasons which would account for plaintiff's injuries, such as operator error or negligent maintenance by plaintiff's employer. Plaintiff's theory that lack of modern devices caused the accident is mere conjecture.

Accordingly, this Court will dismiss plaintiff's claim of negligent failure to equip the tumbler "with available modern devices and appurtenances."

**E. Plaintiff has failed to establish a prima facie case of negligence due to improper maintenance.**

■ Plaintiff brings a further claim against defendant of negligence based on improper maintenance of the deflashing tumbler. However, this claim as well must be dismissed because plaintiff has not presented any evidence that *defendant* was required to maintain the machine after it was sold to plaintiff's employer. There is also no evidence that defendant in fact maintained the machine. Furthermore, the Michigan Supreme Court has held that a manufacturer has no duty to modify its product after the time of sale in accordance with current state of the art safety features. *See Gregory,* 450 Mich. at 22, 538 N.W.2d 325. The Michigan Court of Appeals has stated, in a similar vein, that "a manufacturer who produces products without defects, latent or otherwise, certainly cannot be required to provide to previous purchasers notices of updated features ... where no duty to warn exists, none can be said to continue." *Reeves v. Cincinnati Inc.,* 208 Mich.App. 556, 561, 528 N.W.2d 787 (1995).

In light of the above, plaintiff's claim of negligent failure to maintain the machine will be dismissed.

**F. Plaintiff has failed to establish a prima facie case of breach of implied warranty of fitness for intended purposes.**

■ Under Michigan law, breach of warranty and negligence are separate and distinct theories. *Gregory v. Cincinnati Inc.,* 450 Mich. 1, 11, 538 N.W.2d 325 (1995). A claim for breach of warranty "tests the fitness of the product and requires that the plaintiff 'prove a defect *attributable to the manufacturer* and caus-

*al connection* between that defect and the injury or damage of which [plaintiff] complains.'" *Id.* (quoting *Piercefield v. Remington Arms Co.,* 375 Mich. 85, 98–99, 133 N.W.2d 129 (1965)) (emphasis added). Most importantly, the burden is on the plaintiff to prove that the product was defective at the time it left the defendant's control. *Id.* (citing *Prentis v. Yale Mfg. Co.,* 421 Mich. 670, 365 N.W.2d 176 (1984)).

■ As noted, plaintiff has provided no evidence that the condition of the springs on the latch arm which allegedly existed on the day of the accident existed when the tumbler was manufactured in 1975 or resold as used equipment in 1982. Plaintiff's expert, Neal Hepner, was unable to say whether the springs which he observed during his inspection on February 3, 1997 were the same springs which were on the machine the day of the accident. In addition, it is logical to conclude that the condition of the seal and springs necessarily would have deteriorated from over 14 years of use, assuming under defendant's alternative theory, that the machine and its parts were not properly cared for and maintained by plaintiff's employer. Because plaintiff has not established that the alleged defects relating to the seal and springs existed at the time the machine left the defendant's control, this Court will dismiss plaintiff's breach of implied warranty claim.

For the foregoing reasons, the Court holds that defendant has met its burden of demonstrating that there is no genuine issue of material fact which would warrant a trial in the above-captioned matter. Plaintiff has failed to articulate a prima facie case of either negligence or breach of an implied warranty. As a consequence, defendant's motion for summary judgment will be granted. A judgment in accordance with this opinion shall be entered forthwith.

### *ORDER*

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant Air Products and Chemicals, Inc.'s motion for summary judgment is **GRANTED.**

**SO ORDERED.**

### *JUDGMENT*

The Court, having granted defendant Air Products and Chemicals, Inc.'s motion for summary judgment filed June 3, 1999, after a hearing conducted on July 21, 1999, the Honorable Paul V. Gadola, District Judge, presiding,

It is hereby **ORDERED** and **ADJUDGED** that the above-entitled action be dismissed on the merits;

It is further **ORDERED** and **ADJUDGED** that judgment be entered in favor of defendant Air Products and Chemicals, Inc. and against plaintiff Richard Caswell.